**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **HECTOR SARCO TOCTE**, <br><br> *Petitioner,* <br><br> v. <br><br> **JAMISON, J.L., Warden, Federal Detention Center, Philadelphia, et al.**, <br><br> *Respondents.* | **Case No. 2:26-cv-05410-JDW** |

## MEMORANDUM

There's a difference between "can" and "should." When Congress passed the Criminal Justice Act, it sought to ensure that criminal defendants receive counsel in appropriate proceedings, including some habeas proceedings challenging criminal convictions and related matters. And it gave district judges broad discretion to determine when to appoint counsel in those habeas proceedings. What Congress did not envision was the expenditure of public funds to represent individuals who are subject to civil detention pending proceedings in immigration courts. Hector Sarco Tocte asks me to use the discretion that I have under the CJA to appoint the Federal Community Defender Office as his counsel in this challenge to his immigration detention. I will not do so, though, because I do not think the CJA authorizes that appointment and because, even if I can appoint counsel in this case, the interests of justice do not support the expenditure of public funds on a function that Congress did not intend, so I should not do so.

## I.    BACKGROUND

Mr. Sarco Tocte is a citizen of Ecuador who entered the United States without inspection in September 2023. Since then, he has lived in Upper Darby, Pennsylvania. On July 29, 2026, the United States Department of Homeland Security detained Mr. Sarco Tocte while he was on his way to work. Initially, DHS detained Mr. Sarco Tocte at the Federal Detention Center in Philadelphia, Pennsylvania, but it transferred him to the Pike County Correctional Facility in the Middle District of Pennsylvania.[1]

On July 31, 2026, Mr. Sarco Tocte filed a Verified Petition For Writ Of Habeas Corpus and an accompanying Motion To Appoint The Federal Community Defender Office As Counsel And To Waive Filing Fee. On August 4, 2026, the Government responded to the Petition, conceding that it is detaining Mr. Sarco Tocte pursuant to 8 U.S.C. § 1225(b)(2)(A) and noting that I have addressed the legality of such detention without a bond hearing in prior cases. The Petition and the appointment motion are ripe.

## II.    ANALYSIS

The Criminal Justice Act of 1964 does not authorize me to appoint counsel to represent Mr. Sarco Tocte in this civil case. The purpose of the CJA is "[t]o promote the cause of **criminal justice** by providing for the representation of defendants who are financially unable to obtain an adequate defense **in criminal cases** in the courts of the

---

[1]    That transfer does not divest this Court of jurisdiction over his petition because Mr. Sarco Tocte was still in this District when he filed it. *See Khalil v. President, United States*, 164 F.4th 259, 271 (3d Cir. 2026).

United States." Pub. L. No. 88–455, 78 Stat. 552 (Aug. 20, 1964) (emphasis added). Pursuant to the CJA, "[w]henever ... the court determines that the interests of justice so require, representation may be provided for any financially eligible person who—(B) is seeking relief under section 2241, 2254, or 2255 of title 28." 18 U.S.C. § 3006A(a)(2)(B). Mr. Sarco Tocte contends that this statute empowers me to appoint the Federal Community Defender Office to represent him in this matter, but he is wrong.

When interpreting a statute like the CJA, my job "is to effectuate Congress's intent." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 295 (3d Cir. 2012) (citation omitted). Because I must "presume that Congress' intent is most clearly expressed in the text of the statute," my analysis starts "with an examination of the plain language of the relevant provision." *Id.* (quotation omitted). However, in trying to determine Congress's intent, I should also "consider the entire scope of the relevant statute." *Id.* Indeed, it is often the case that "the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" *King v. Burwell*, 576 U.S. 473, 486 (2015) (quotation omitted). So, to determine what the plain language is, I must "read the words 'in their context and with a view to their place in the overall statutory scheme.'" *Id.* (same).

Mr. Sarco Tocte seeks habeas relief from his immigration detention pursuant to 28 U.S.C. § 2241. On its face, then, it appears that the CJA permits me to appoint counsel to represent him in this matter. *See* 18 U.S.C. § 3006A(a)(2)(B). That's an overly simplistic reading, though. Congress passed the CJA to ensure representation for criminal

3

defendants who could not otherwise afford to hire an attorney. Section 3006A references habeas petitions under Sections 2254 and 2255, which are statutes that criminal defendants use to challenge state and federal convictions. The doctrine of *noscitur a sociis* suggests that because the CJA references Section 2254 and 2255, its reference to Section 2241 in the same provision pertains to criminal petitions under that statute. The title of the statute is "Adequate representation of **defendants**." 18 U.S.C. § 3006A (emphasis added). Although not dispositive, the statutory title can shed light on Congress's intent in adopting a statute. *See United States v. Quality Stores, Inc.*, 572 U.S. 141, 150-51 (2014). And, at least one Court of Appeals has held that the CJA's "legislative history makes it clear that the statute and its amendment provide for the appointment of counsel in *criminal* proceedings or in those proceedings 'intimately related to the criminal process.'" *Perez-Perez v. Hanberry*, 781 F.2d 1477, 1480 (11th Cir. 1986) (quotation omitted) (original emphasis). All of this persuades me that Congress's reference to petitions under 2241 in Section 3006A(a)(2)(B) refers to petitions challenging criminal convictions or sentences, not challenges to civil immigration detention like this case presents.

Even if Section 3006A authorized me to appoint counsel in this case, I would still not do so. The statute only authorizes a district court to appoint counsel for financially eligible people if the court "determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2). District judges have broad discretion to decide when to appoint counsel in

a civil case. *See Tabron v. Grace*, 6 F.3d 147, 154-55 (3d Cir. 1993).[2] In *Tabron*, the Third

Circuit provided factors to guide district judges in the exercise of that discretion. First, a

judge must consider whether a plaintiff's petition has some merit in fact and law. *See*

*Tabron*, 6 F.3d at 155. If so, then the judge can consider six additional factors: (1) the

plaintiff's ability to present his own case; (2) the complexity of the legal issues; (3) the

degree to which factual investigation will be necessary and the plaintiff's ability to pursue

such an investigation; (4) the likelihood that a case will turn on credibility determinations;

(5) whether the case will require the testimony of expert witnesses; and (6) whether the

plaintiff can obtain and afford counsel on his own behalf. *Id.* at 156-57. This list of factors

is not exhaustive. *Id.* at 157.

Although Mr. Sarco Tocte's case has merit, the *Tabron* factors and other

considerations do not favor the appointment of the Federal Community Defender Office

as counsel in this case. *First*, there is no reason that Mr. Sarco Tocte cannot present his

case himself and obtain private counsel. Since November 2025, I have personally handled

dozens of these cases, my colleagues on this Court have handled hundreds of such cases,

and district courts around the country have handled thousands (maybe tens-of-

thousands) more. Consistently, the petitioners have private counsel in these cases. There's

no reason to think that Mr. Sarco Tocte (or other, future petitioners) is unable to secure

---

[2]      *Tabron* considered appointment of counsel under 28 U.S.C. § 1915(d), but courts
in this Circuit have applied the case to questions of appointment of counsel under Section
3006A(a)(2) as well. *See U.S. v. Winkelman*, 548 F. Supp.2d 142, 160-61 (M.D. Pa. 2008).

counsel as well. *Second*, most of the cases at this point turn on well-developed legal issues, not on novel questions or factual information that require counsel's involvement.

*Third*, and most importantly, this is, as I have explained, not the kind of appointment that Congress envisioned under the CJA. The appointment of counsel under the CJA involves the expenditure of public funds, so district judges must be cautious about appointments that reflect mission creep under the statute. In addition, appointing lawyers under the CJA for these types of cases means that the appointed lawyers (who only have so many hours in the day) are less available to represent the criminal defendants whose protection is the CJA's core purpose. For all these reasons, I conclude that appointment of counsel under the CJA in this dispute over civil immigration detention is not in the interests of justice.

## III.   CONCLUSION

Mr. Sarco Tocte is not a criminal detainee, nor is this a criminal case. Therefore, he cannot demonstrate that the Criminal Justice Act authorizes me to appoint counsel to represent him in this civil matter, and I will deny his motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*

JOSHUA D. WOLSON, J.

August 4, 2026